## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CENTRAL LABORERS' PENSION FUND,<br>NORTH CENTRAL LABORERS-EMPLOYERS<br>  COOPERATION AND EDUCATION TRUST ("LECET"),<br>MIDWEST REGION FOUNDATION FOR FAIR<br>  CONTRACTING, INC. ("MRFFC"),<br>ILLINOIS LABORERS' LEGISLATIVE COMMITTEE,<br>MARKET PRESERVATION FUND ("MKTPRES"),<br>and the GREAT PLAINS LABORERS' DISTRICT COUNCIL<br>  WORKING DUES CHECK OFF FUND<br><br>                Plaintiffs,<br><br>    v.<br><br>M2 CONSTRUCTION, INC.,<br>an Illinois corporation, and<br>RAMON CALDERON, individually,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**20-C-1856** |

## COMPLAINT

Plaintiffs Central Laborers' Pension Fund, *et al.* (collectively "Plaintiff Funds"), by their attorneys, complain against Defendants M2 CONSTRUCTION, INC., an Illinois corporation, and RAMON CALDERON, individually, stating as follows:

## COUNT I
*against*
M2 CONSTRUCTION, INC.
(*Claim under ERISA for delinquent employee fringe benefit contributions and related amounts*)

1.     This action arises under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132, 1145 ("ERISA"); the Labor Management Relations Act, as amended, 29 U.S.C. § 185(a) ("LMRA"); 28 U.S.C. § 1331; and federal common law.

2.     Plaintiff Funds are multiemployer pension funds, welfare funds, apprentice funds, and related funds established pursuant to collective bargaining agreements between, on the one hand, the Laborers International Union of North America (the "Union") and district councils and

local unions affiliated with the Union, and, on the other hand, certain employer associations and employers. The Union and its affiliated local unions and district councils are labor organizations within the meaning of the LMRA, 29 U.S.C. § 152(5), representing employees in an industry affecting commerce as defined by the LMRA, 29 U.S.C. § 185(a).

3. Plaintiff Funds receive fringe benefit contributions and dues payments from certain employers pursuant to collective bargaining agreements between, on the one hand, the Union and district councils and local unions affiliated with the Union, and, on the other hand, certain employer associations and employers, all on behalf of employees covered by the collective bargaining agreements. The Plaintiff Funds' right to receive fringe benefit contributions and dues payments also arises pursuant to participation agreements between the Plaintiff Funds and employers.

4. Plaintiffs Central Laborers' Pension Fund is the authorized collection agent for the other Plaintiff Funds with respect to fringe benefit contributions and dues payments.

5. M2 CONSTRUCTION, INC. is an Illinois corporation doing business in (and with its principle place of business in) the Northern District of Illinois. Venue in this district is proper under ERISA, 29 U.S.C. § 1132(e)(2); and 28 U.S.C. § 1391(b). M2 CONSTRUCTION, INC. is an "employer" and a "party-in-interest" as those terms are defined by, respectively, Sections 3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(14)(C).

6. M2 CONSTRUCTION, INC. became a party to and bound by collective bargaining agreements with the Union (and/or one or more local unions and district councils affiliated with the Union) by virtue of its execution of one or more memorandum of agreements or other collective bargaining agreements. Copies of signature pages of such collective bargaining agreements are attached as *Exhibit A*. M2 CONSTRUCTION, INC. has never terminated the collective bargaining agreements and they remain in effect.

7.     By virtue of certain provisions contained in the collective bargaining agreement(s), M2 CONSTRUCTION, INC. became a party to and bound by the Plaintiff Funds' trust agreements.

8.     M2 CONSTRUCTION, INC. became a party to and bound by one or more participation agreements with the Plaintiff Funds.  Copies of such participation agreements are attached as *Exhibit B*.  M2 CONSTRUCTION, INC. has never terminated the participation agreements and they remain in effect.

9.     By virtue of certain provisions contained in the participation agreement(s), M2 CONSTRUCTION, INC. became a party to and bound by the Plaintiff Funds' trust agreements.

10.     M2 CONSTRUCTION, INC. became a party to and bound by the collective bargaining agreements, participation agreements and trust agreements by virtue of its signing and submitting (and certain provisions contained in) employer contribution report forms to the Plaintiff Funds.

11.     M2 CONSTRUCTION, INC. became a party to and bound by the collective bargaining agreements, participation agreements and trust agreements by virtue of its withholding of (some but not all) payroll deductions and dues consistent with the collective bargaining agreements, participation agreements, and trust agreements.

12.     M2 CONSTRUCTION, INC. became a party to and bound by the collective bargaining agreements, participation agreements and trust agreements by making (some but not all) employee fringe benefit contributions and dues payments to the Plaintiff Funds.

13.     Under the terms of the collective bargaining agreements, participation agreements and trust agreements, M2 CONSTRUCTION, INC. is required to make fringe benefit contributions and dues payments to the Plaintiff Funds on behalf of employees performing work covered by the collective bargaining agreement; the contributions and dues are required to be at the hourly rates indicated in the collective bargaining agreement and participation agreements.  Under the terms of

the agreements, M2 CONSTRUCTION, INC. is also required to submit monthly remittance reports identifying, among other things, the employees covered under the collective bargaining agreement and the amount of contributions and dues to be remitted on behalf of each covered employee.

14.     The Plaintiff Funds conducted an audit of M2 CONSTRUCTION, INC. for the period November 1, 2014 through September 30, 2019. A copy of that audit is attached as *Exhibit C*. The audit revealed that M2 CONSTRUCTION, INC. failed and refused to pay all contributions and work dues in accordance with the provisions of the collective bargaining agreements, participation agreements, and trust agreements. Additionally, the audit revealed that M2 CONSTRUCTION, INC. failed and refused to pay, when due, all contributions and work dues in accordance with the provisions of the collective bargaining agreements, participation agreements, and trust agreements. The unpaid amounts total not less than the following:

Delinquent Contributions:.................................................$1,309.94

**Total:     $1,309.94**

15.     M2 CONSTRUCTION, INC. also failed and refused to *timely* pay all contributions and work dues when due for the months July 2019, August 2019, and September 2019, as required by provisions of the collective bargaining agreements, participation agreements, and trust agreements.

16.     The participation agreements and trust agreements provide for a penalty assessment equal to 10% of the contributions unpaid on the 15th day of the month next following the month for which the contributions are due. ERISA additionally provides, in 29 U.S.C. § 1132(g)(2)(C), that upon recovery of unpaid benefit contributions by a fiduciary of a benefit plan, "the court shall award the plan…liquidated damages provided for under the plan in an amount not in excess of 20 percent."

17.     Because contributions were not paid when due, M2 CONSTRUCTION, INC. incurred 10% penalty assessments in accordance with the collective bargaining agreements, participation agreements, and trust agreements totaling not less than the following:

| | | |
|---|---|---|
| Liquidated Damages (audited delinquencies): | $130.99 | (see ¶ 14) |
| Liquidated Damages (July 2019, Local 393): | $106.28 | (see ¶ 15) |
| Liquidated Damages (August 2019, Local 393): | $206.68 | (see ¶ 15) |
| Liquidated Damages (September 2019, Local 393): | $230.16 | (see ¶ 15) |
| **Total:** | **$674.11** | |

18.     Audit costs, for which IMAGE PRO'S ASPHALT MAINTENANCE, INC. is liable in accordance with the trust agreements, total not less than $1,745.96.

19.     The total amount owed by M2 CONSTRUCTION, INC. pursuant to the collective bargaining agreements, participation agreements, and trust agreements is not less than **$3,730.01**, consisting of not less than $1,309.94 in delinquent fringe benefit contributions, note less than $1,745.96 in audit costs, and not less than $674.11 in late payment penalties.

20.     M2 CONSTRUCTION, INC. has failed and refused to pay the amount of $3,730.01 known to be due to Plaintiffs.

21.     Plaintiffs have been required to employ auditors and the undersigned attorneys to identify and pursue collection of the amount due from M2 CONSTRUCTION, INC.

22.     ERISA provides, in 29 U.S.C. § 1132(g)(2)(D), that upon recovery of unpaid benefit contributions by a fiduciary of a benefit plan, "the court shall award the plan…reasonable attorney's fees and costs of the action, to be paid by the defendant."  The participation agreements and trust agreements also provide that employers who become delinquent in making fringe benefit contributions are liable to the Plaintiff Funds for attorney's fees and costs.

23.     ERISA provides, 29 U.S.C. § 1132(g)(2)(B), that upon recovery of unpaid benefit contributions by a fiduciary of a benefit plan, "the court shall award the plan…interest on the unpaid contributions."  If litigation is instituted to collect an amount due, the trust agreements provide for interest at the rate of 9.5%.

WHEREFORE, Plaintiffs respectfully request that this Court:

A.     Enter judgment against M2 CONSTRUCTION, INC., in favor of Plaintiffs.

B.     Order M2 CONSTRUCTION, INC. to pay Plaintiffs not less than $3,730.01.

C.     Order M2 CONSTRUCTION, INC. to perform and continue to perform all obligations it has undertaken with respect to the Plaintiff Funds.

D.     Order M2 CONSTRUCTION, INC. to pay interest, costs, and reasonable attorney's fees to Plaintiffs pursuant to 29 U.S.C. § 1132(g)(2).

E.     Grant Plaintiffs such other and further relief as may be just.

## COUNT  II
### *against*
RAMON CALDERON

1. - 23.     Plaintiffs reallege paragraphs 1 - 23 of Count I.

24.     This Count arises from a common nucleus of operative facts with Count I and Count II and is pendent to those counts.

Breach of Contract / Trust agreement

25.     Plaintiffs are advised and believe that RAMON CALDERON is the President, Chief Executive Officer, Chief Financial Officer, and Chief Operating Officer of M2 CONSTRUCTION, INC. and is in control of the corporation.  Further, Plaintiffs are advised and believe that RAMON CALDERON is a director of M2 CONSTRUCTION, INC.

26.     Pursuant to the collective bargaining agreements to which M2 CONSTRUCTION, INC. agreed to be bound, where there is any willful violation of any of the requirements of the trust agreements, the officers and directors of the employer shall be personally liable for any underpayment or other pecuniary loss to the Plaintiff Funds as a result of such conduct.

27.     Pursuant to the trust agreements establishing the Plaintiff Funds, to which M2 CONSTRUCTION, INC. and RAMON CALDERON agreed to be bound, where there is any willful violation of any of the requirements of the trust agreements, the officers and directors of the employer who supervised the completion of report forms, signed report forms, or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment or other pecuniary loss to the Central Laborers' Pension Fund as a result of such conduct.

28.     Plaintiffs are informed and believe that RAMON CALDERON did so supervise the completion of report forms, sign report forms, and had personal knowledge of the willful violations of the requirements of the collective bargaining agreement and trust agreements, making RAMON CALDERON personally liable for the money owed to the Plaintiff Funds by M2 CONSTRUCTION, INC.

Piercing the Corporate Veil

29.     There is a unity of interest and ownership between M2 CONSTRUCTION, INC. and RAMON CALDERON such that the separate personalities of the corporation and the individual no longer exist, and adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, and promote inequitable consequences, making RAMON CALDERON personally liable for the money owed to the Plaintiff Funds by M2 CONSTRUCTION, INC.

Alter Ego and/or Single Employer

30.     Upon information and belief, and at all times material to this complaint, M2 CONSTRUCTION, INC. and RAMON CALDERON have been affiliated and intertwined business

enterprises with substantially identical management, business purposes, operations, jobs, services, production processes, products, equipment, facilities, customers, personnel, supervision, and ownership.

31.     Based on their nature and activities as alleged above, M2 CONSTRUCTION, INC. and RAMON CALDERON constitute a single integrated business enterprise and have been, at all material times, alter egos and a single employer.  RAMON CALDERON is therefore bound by the terms of the Memorandum of Agreement and the trust agreements, making him personally liable for the money owed to the Plaintiff Funds by M2 CONSTRUCTION, INC.

WHEREFORE, Plaintiffs respectfully request that this Court:

A.     Enter judgment against RAMON CALDERON in favor of Plaintiffs.

B.     Order RAMON CALDERON to pay Plaintiffs $3,730.01, plus any additional amount shown to be due.

C.     Order RAMON CALDERON to cause M2 CONSTRUCTION, INC. to perform and continue to perform all obligations it has undertaken with respect to the Plaintiff Funds.

D.     Order RAMON CALDERON to pay interest, costs, and reasonable auditors' and attorneys' fees to Plaintiffs pursuant to 29 U.S.C. § 1132(g)(2).

E.     Grant Plaintiffs such other and further relief as may be just.

Respectfully submitted,

CENTRAL LABORERS' PENSION FUND, *et al*.

By:   /s/ *Richard A. Toth*
DALEY AND GEORGES, LTD.
*Attorneys for Plaintiffs*
20 S. Clark St., Suite 400
Chicago, Illinois  60603-1835
(312) 726-8797
Fax:  (312) 726-8819
E-mail:  rtoth@daleygeorges.com

09/10/2015 08:27 FAX                                                                      ☒ 0003/0005

15443

03/27/2015 12:40    3096922698          GPLDC                        PAGE  01/01
03/27/2015 10:10 FAX

B

7.    The parties agree that nothing herein is intended to nor shall it be construed as creating recognition of or bargaining with a multi-employer bargaining unit other than those already recognized by the Local Union and limited to the geographical jurisdiction of the Local Unions.

8.    This Agreement shall remain in full force and effect through April 30, 2017, and shall continue thereafter unless there has been sixty (60) days written notice, by registered or certified mail, by either party hereto of the desire to modify and amend this Agreement for negotiations. The EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Memorandum of Agreement and extending this Agreement for the life of the newly negotiated contract, if not notified within the specified period of time.

9.    The EMPLOYER acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The EMPLOYER further acknowledges receipt of a copy of the complete COLLECTIVE BARGAINING AGREEMENT.

IN WITNESS WHEREOF, and in consideration of the mutual promises of the parties hereto, and other good and valuable consideration, this Memorandum of Agreement was entered into this 26 day of Aug, 2015.

ACCEPTED:

LABORERS' LOCAL UNION NO. 393

_Kevin Dale_
(Business Manager)


GREAT PLAINS LABORERS'
DISTRICT COUNCIL

_Chas H. Shugh_
(Business Manager)


M2 CONSTRUCTION
(Contractor Name)

_(Signature)_

RAY CALDERON
(Name & Title)

2646 W AUGUSTA
(Address)

CHICAGO IL 60622
(City, State & Zip Code)

773 407 4852
(Telephone Number)

_____
(Facsimile Number)

REDACTED
(Federal Employer Identification Number)

-3-



RECEIVED
SEP 10 2015

EXHIBIT
A

09/10/2015 08:27 FAX                                                                    ☒0005/0005

15443

B

### MONEY FOLLOWS THE MAN ADDENDUM TO COLLECTIVE BARGAINING AGREEMENT

M2 Construction _____ shall make the following fringe benefit contributions for the employer's
(Employer Name)
employees to the Trust Funds and/or Local Unions designated by the employee as their Home Trust Fund, provided that
the Employee's Home Trust Fund(s) agree to accept the contributions. Contribution rates are determined and paid as
listed in the current wage addendum pursuant to the employee's Home Trust Fund/Local Union.

1) Pension

2) Welfare

3) Annuity

M2 Construction _____ agrees to pay all other and additional contributions and deductions not
(Employer Name)
set forth above, to the representative Trusts Funds and/or Local Unions in the amounts and rates set forth in the Local
Union/District Council Agreement where the work is performed.

The parties signatory hereto agree to indemnify the Central Laborers' Pension, Welfare and Annuity Funds', North Central
Illinois Laborers' Health & Welfare Fund, Northern Illinois Annuity Fund, Great Plains Laborers' Annuity Fund, Laborers'
Pension Fund, Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and
Vicinity, Fox Valley Laborers' Health and Welfare Fund, Fox Valley and Vicinity Laborers', Pension Fund and hold its
Trustees harmless for any action or inaction by the employer who has failed to comply by transmitting (or not transmitting)
the appropriate monies to a Home Trust Fund and/or Local Union. This Addendum shall be limited to the jurisdiction of
the Local Union signatory hereto.

M2 Construction                                       773·407-4852
(Employer Name)                                      (Phone)

2646 W August                                        Chicago, IL 60622
(Address)                                            (City, State Zip)

                                                     8/26/15
(Authorized Signature)                               (Date)


Great Plains Laborers' District Council               Construction & General Laborers' District
                                                      Council Chicago and Vicinity

(Authorized Signature)                               (Authorized Signature)

Business Manager    10·29-627                         Business Manager    11-1-10
(Title)             (Date)                            (Title)             (Date)


393
(Local Union)                                        (Local Union)

(Authorized Signature)                               (Authorized Signature)

Business Manager
(Title)                                              (Title)

5/1/14
(Date)                                               (Date)

RECEIVED
SEP 10 2015

09/10/2015 08:27 FAX  ☎0004/0005

the contrary notwithstanding, and the Employer shall be liable for all reasonable costs of collection of the payments due together with reasonable attorney's fees and such other reasonable costs and charges as may be assessed by the Funds pursuant to the Trust Agreements and the applicable policies adopted by the Funds, including the cost of any and all payroll examinations. In addition, the Employer agrees that all remittances not received by the 15th day of the month next following the month for which the contributions and other payments are due are subject to assessment of liquidated damages in the amount of 10% of the contributions and other payments or $25.00 minimum per remittance, to delay the increased administrative costs resulting from late payments.

10.  Designated Trustees.  The Employer hereby irrevocably designates as its representatives on the Board of Trustees of the Funds such Trustees as are now serving, or their successors who will serve in the future, as Employer Trustees together with their successors. The Employer further agrees to be bound by all actions taken by the governing bodies of the Funds pursuant to the Trust Agreements as heretofore and/or hereafter amended.

11.  Tax Status.  It is agreed that the Funds which accept contributions that are a deduction for income tax purposes shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions as a deduction for income tax purposes.

12.  Copies of CBA's.  The Employer and/or Local Union/District Council  agrees that it shall, upon request of the Funds, provide a signed copy of all CBA's to the Funds to which the Employer is a signatory.

13.  Effective Date.  Unless otherwise specifically agreed to by the Employer and Funds, this Agreement shall remain in effect until terminated. This Agreement shall be terminated in the same manner and subject to the same requirements as each CBA incorporated herein; however, in order for termination of this Agreement to coincide with termination of any CBA incorporated herein, the Employer must timely provide a separate written notice of termination to the Funds that satisfies the requirements of the applicable CBA.  This Agreement will be deemed terminated, in toto, when a timely required notice has been provided by the Employer with respect to each CBA incorporated herein and the term of each CBA incorporated herein has expired without the CBA being renewed or otherwise extended.

14.  Necessary Authority.  The Employer and the Employer's agent signing on behalf of the Employer represent and warrant that: (a) the Employer's agent identified below has full power and authority to execute and deliver this Agreement; (b) this Agreement has been duly authorized, executed and delivered on behalf of the Employer; and (c) this Agreement constitutes a legal, valid and binding obligation of the parties hereto which is enforceable against the parties in accordance with its terms.

NO ALTERATIONS OR ADDITIONS TO THIS PARTICIPATION AGREEMENT SHALL BE EFFECTIVE UNLESS APPROVED IN WRITING BY THE TRUSTEES OF THE FUND.  TO THE EXTENT THERE EXISTS ANY CONFLICT BETWEEN PROVISIONS OF THIS PARTICIPATION AGREEMENT AND ANY PROVISIONS OF THE COLLECTIVE BARGAINING AGREEMENT, THE PARTICIPATION AGREEMENT SHALL CONTROL.

| EMPLOYER | CENTRAL LABORERS' FUNDS |
|---|---|
| M-2 Construction | Tony J Hill |
| Name of Business | Authorized Signature |
| 2646 W Augusta | Executive Director |
| Address | Title |
| Chicago, IL 60622 | LOCAL UNION |
| City/State/Zip Code | Territory in which Agreement signed: Local 393 |
| 773-407-4852 | Kevin Dale |
| Telephone | Authorized Signature |
| [signature] | Business Manager |
| Authorized Signature | Title |
| V.P. - Operations | 3-17-15 |
| Title | Date |
| 8/26/15 | |
| Date | |



RECEIVED
SEP 10 2015

EXHIBIT
B

Revised January ___, 2015.

STATEMENT OF ADDITIONAL
REPORTABLE HOURS DUE FOR
M-2 CONSTRUCTION
ON BEHALF OF THE
CENTRAL LABORERS' PENSION,
WELFARE AND ANNUITY FUNDS
FOR THE PERIOD
NOVEMBER 1, 2014 TO SEPTEMBER 30, 2019



EXHIBIT

C



# ROMOLO
## & ASSOCIATES, LLC
CERTIFIED PUBLIC ACCOUNTANTS

1700 W. LUTHY DRIVE, PEORIA IL 61615
PHONE 309.682.2001 • FAX 309.682.2045 • romolocpa.com

Central Laborers' Pension,
Welfare and Annuity Funds
Jacksonville, Illinois

We have performed the procedures enumerated on the attached supplement, which were agreed to by the Central Laborers Pension, Welfare, & Annuity Funds (the Fund), solely to assist you with respect to the selected payroll and related records of M-2 Construction (the employer). for the period of November 1, 2014 to September 30, 2019. The employer's management is responsible for the employer records provided to us. These procedures were designed to determine if the data submitted by the Employer is in compliance with the reporting provisions of the collective bargaining agreements, participation agreements, and Central Laborers Pension, Welfare, & Annuity Funds' Trust Agreements. The sufficiency of the procedures is solely the responsibility of those parties specified in the report. Consequently, we make no representation generally regarding the sufficiency of the procedures described in the attached supplement either for the purpose for which this report has been requested or for any other purpose.

The scope of this engagement is limited to records made available by the employer and would not necessarily disclose all exceptions in employer contributions to the Fund. Any compensation paid to employees not disclosed to us or made part of the written record was not determinable by us and was not included in our review.

Our procedures performed are found on the attached supplement.

In connection with the above procedures, certain matters came to our attention that resulted in findings of additional Employer contributions, as shown in the summary of amounts due, were due to the Funds in the amount of $1,309.94.

In addition, the accompanying notes herein identify any special circumstances that we believe the Trustees should consider in evaluating this report. These notes are an integral part of this report and should be reviewed to completely understand this report.

Our procedures related to an examination of the employer's payroll records provided to us and did not extend to any financial statements of the contributing employer. The procedures were substantially less in scope than an audit of the financial statements of the contributing employer, the objective of which is the expression of an opinion on the contributing employer's financial statements. Accordingly, no such opinion is expressed. Had we performed additional procedures other matters might have come to our attention that would have been reported to you.

This report is intended solely for the information of the Central Laborers Pension, Welfare, & Annuity Funds and is not intended to be and should not be used by anyone other than those specified parties.



Romolo & Associates, LLC
Certified Public Accountants
Peoria, IL
January 29, 2020

## CONSULTING AGREEMENT PROCEDURES PERFORMED

1.  Obtained a basic understanding of the Employer's payroll and fringe benefit reporting system.

2.  Obtained access to some or all of the following accounting records from the Employer:

    o   Payroll journals or computer printouts with paycheck history, employee hours, gross wages
    o   Individual earnings and time records on all employees or computer printout with paycheck history
    o   Any certified payroll records provided to outside parties
    o   Annual earnings records (W-2's and W-3)
    o   Quarterly employer's federal withholding and FICA tax returns (Forms 941)
    o   Quarterly employer's contribution and wages reports for state unemployment compensation
    o   Employer's copies of monthly fringe benefit report forms
    o   Employee occupation listing
    o   Cash disbursement records
    o   Payments to subcontractors
    o   Most recent union contract

3.  To determine that we were provided with the entire payroll we performed the following procedure:

    o   Agreed gross wages per the Employer's payroll to the W-2s/W3 on a test basis

4.  In order to determine that all hours/months for covered work were properly reported to the Funds we performed the following test procedures on some or all employees:

    o   Determined classifications of employees and/or their union affiliation based on the employer's records
    o   Compared hours/months worked, per the employer's records, by covered employees to the hours/months reported based on information reported by the Fund
    o   Reviewed and relied upon union report forms filed with other benefit funds as provided to us by the employer for hours worked by covered participants, not reported to the Fund

5.  Reviewed findings with the Employer Representative at the conclusion of our procedures and discussed possible delinquencies.

    (Please see Notes for any scope limitation on the above procedures or additional procedures performed not described above.)

**M-2 CONSTRUCTION**
**NOTES TO CONSULTING PROCEDURES**
**NOVEMBER 1, 2014 TO SEPTEMBER 30, 2019**

**NOTE 1      SUMMARY OF FINDINGS**

This employer is located outside of the Fund's jurisdiction. During our examination period it appears as though the employer performed work on three jobs in the Fund's jurisdiction. Please be advised that the location of the work was determined by using certified payroll records which were provided to us by the employer. These certified payroll records were not actually filed with the government, and acted more like timesheets. Several different jobs were listed for the same week on these records. Therefore, in order to determine the location of the work, we relied on conversation with the employer representative and how the union operators were listed on the weekly certified payrolls. For example, if a Central Illinois union operator was listed on the certified payroll for a given week, we assumed that the employer was working in Ottawa, IL, the Local 393 jurisdiction.

Further be advised that the employer occasionally used Chicago Laborers on these jobs and their reporting practices for these individuals varied.

In the instances where the employer reported fringe benefits to Central Laborers for the Chicago members, they reported the smaller fringe benefits and the working dues only. We verified that any Pension and Welfare benefits were reported to Chicago, or they had been identified and accounted for in the examination report produced by the examiner for the Chicago funds. At the direction of the Fund office, we have not shown the Annuity fringe benefit as due for these hours.

On other occasions the employer used Chicago laborers in the Local 393 jurisdiction and paid all of the fringe benefits to their home local. In these instances, we have shown the smaller fringe benefits and the working dues as due herein under Local 393B-CHI. We were also directed by the Fund office to exclude the Annuity fringe benefit from our findings. Additionally, since deductions were not taken from these Chicago laborers' paychecks for Vacation, we have not shown any Vacation amounts as due and owing.

## M-2 Construction
## TOTAL SUMMARY OF AMOUNTS DUE
### November 1, 2014    To    September 30, 2019

| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | TOTAL |
|---|---|---|---|---|---|---|---|
| TRAINING | $ - | $ - | $ - | $ 315.60 | $ - | $ - | $ 315.60 |
| LECET NC | $ - | $ - | $ - | $ 68.51 | $ - | $ - | $ 68.51 |
| MRFFC NC | $ - | $ - | $ - | $ 39.45 | $ - | $ - | $ 39.45 |
| ILLEG* NC | $ - | $ - | $ - | $ 59.19 | $ - | $ - | $ 59.19 |
| MKTPRES NC | $ - | $ - | $ - | $ 98.64 | $ - | $ - | $ 98.64 |
| WORKING DUES | $ - | $ - | $ - | $ 728.55 | $ - | $ - | $ 728.55 |
| | | | | | | | |
| TOTAL DUE | $ - | $ - | $ - | $ 1,309.94 | $ - | $ - | $ 1,309.94 |

## M-2 Construction - CLPWAF
## Unreported Regular Hours
### For period 1/1/2017 - 12/31/2017
### Local: 393B-CHI

| | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MARQUEZ,REFUGIO, ▮ | 0.00 | 0.00 | 0.00 | 40.00 | 114.00 | 75.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 229.50 |
| PERSONIUS, KENNETH ▮ | 0.00 | 0.00 | 0.00 | 43.50 | 113.50 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 165.00 |
| Unreported Regular Hours | 0.00 | 0.00 | 0.00 | 83.50 | 227.50 | 83.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 394.50 |
| **Amounts Due** | | | | | | | | | | | | | |
| TRAINING | $0.00 | $0.00 | $0.00 | $66.80 | $182.00 | $66.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $315.60 |
| LECET NC | $0.00 | $0.00 | $0.00 | $12.53 | $40.95 | $15.03 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $68.51 |
| MRFFC NC | $0.00 | $0.00 | $0.00 | $8.35 | $22.75 | $8.35 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $39.45 |
| ILLEG* NC | $0.00 | $0.00 | $0.00 | $12.53 | $34.13 | $12.53 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $59.19 |
| MKTPRES NC | $0.00 | $0.00 | $0.00 | $20.88 | $56.88 | $20.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $98.64 |
| **Total Liability** | $0.00 | $0.00 | $0.00 | $121.09 | $336.71 | $123.59 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $581.39 |
| **Rates** | | | | | | | | | | | | | |
| TRAINING | 0.800 | 0.800 | 0.800 | 0.800 | 0.800 | 0.800 | 0.800 | 0.800 | 0.800 | 0.800 | 0.800 | 0.800 | |
| LECET NC | 0.150 | 0.150 | 0.150 | 0.150 | 0.180 | 0.180 | 0.180 | 0.180 | 0.180 | 0.180 | 0.180 | 0.180 | |
| MRFFC NC | 0.100 | 0.100 | 0.100 | 0.100 | 0.100 | 0.100 | 0.100 | 0.100 | 0.100 | 0.100 | 0.100 | 0.100 | |
| ILLEG* NC | 0.150 | 0.150 | 0.150 | 0.150 | 0.150 | 0.150 | 0.150 | 0.150 | 0.150 | 0.150 | 0.150 | 0.150 | |
| MKTPRES NC | 0.250 | 0.250 | 0.250 | 0.250 | 0.250 | 0.250 | 0.250 | 0.250 | 0.250 | 0.250 | 0.250 | 0.250 | |

# M-2 Construction - CLPWAF
## Unreported Gross Wages
### For period 1/1/2017 - 12/31/2017
### Local: 393B-CHI

| | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MARQUEZ,REFUGIO, | $0.00 | $0.00 | $0.00 | $1,620.00 | $4,657.50 | $3,128.63 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $9,406.13 |
| PERSONIUS, KENNETH | $0.00 | $0.00 | $0.00 | $1,832.63 | $4,627.13 | $324.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6,783.76 |
| Unreported Total Gross Wage | $0.00 | $0.00 | $0.00 | $3,452.63 | $9,284.63 | $3,452.63 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $16,189.89 |
| Amounts Due | | | | | | | | | | | | | |
| Working Dues | $0.00 | $0.00 | $0.00 | $155.37 | $417.81 | $155.37 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $728.55 |
| Total Liability | $0.00 | $0.00 | $0.00 | $155.37 | $417.81 | $155.37 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $728.55 |
| Rates | | | | | | | | | | | | | |
| Working Dues | 4.50% | 4.50% | 4.50% | 4.50% | 4.50% | 4.50% | 4.50% | 4.50% | 4.50% | 4.50% | 4.50% | 4.50% | |